**Van HOWELL, Plaintiff-Appellant,**

**v.**

**Joe D. TANNER, Individually and as Commissioner of Department of Natural Resources, et al., Defendants-Appellees.**

**No. 79–3374.**

United States Court of Appeals,
Fifth Circuit.
Unit B

July 13, 1981.

Rehearing and Rehearing En Banc
Denied Sept. 18, 1981.

J. E. B. Stewart, Jonesboro, Ga., for plaintiff-appellant.

Mark A. Dickerson, Isaac Byrd, Asst. Attys. Gen., Atlanta, Ga., William P. Langdale, Jr., Valdosta, Ga., for defendants-appellees.

Ronald A. Lowry, Atlanta, Ga., for Raulerson.

Before JONES, FAY and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

The appellant, Van Howell, filed suit in the United States District Court for the Northern District of Georgia pursuant to provisions of 42 U.S.C. §§ 1983 and 1985(3) [1]

---

1. The § 1985(3) claims were dismissed by order of May 22, 1978, because the complaint was devoid of factual allegations from which it could be concluded that Howell was a member of a class against which invidious bias might exist. *See McLellan v. Mississippi Power & Light Company,* 526 F.2d 870 (5th Cir. 1976) *modified* 545 F.2d 919 (5th Cir. 1977); *Fallis v.*

alleging that he was maliciously arrested and prosecuted as well as physically accosted in violation of his constitutional rights. Named as defendants were the Georgia Department of Natural Resources (DNR); Joe D. Tanner, Commissioner of the DNR; Louis T. Raulerson, Ross Knowlton and Wallace King, employees of the DNR; J. Leon Raulerson, the former sheriff of Echols County, Georgia; and The Langdale Company, the owner of the land subject to a game management contract with the DNR.

On June 21, 1975, Howell was arrested and cited by state game and fish officers Knowlton and King on charges of criminal trespass and possession of a firearm. Louis T. Raulerson conferred with the officers at the arrest site. Shortly thereafter warrants on the same charges were sworn out against Howell by Raulerson. On January 28, 1976, J. Leon Raulerson, brother of Louis Raulerson and the sheriff of Echols County, drew up an affidavit in support of the accusations which were then pending in Echols Superior Court.

Meanwhile earlier that month, on January 3, 1976, Louis T. Raulerson had had a previous encounter with Howell. While driving near Halo, Georgia in the company of his daughter, Howell was waved down by Raulerson, who was standing by the DNR car which had been assigned to him. Raulerson was dressed in his DNR uniform but was off-duty. When he had stopped, Howell was questioned by Louis Raulerson about nails which had been placed on the property leased by The Langdale Company to DNR. The parties disagree on the sequence of events which followed. Howell contends that Raulerson maliciously and without warning shot him several times

with a DNR rifle and then beat and kicked him while he lay unconscious on the roadway. By Raulerson's account the trouble began when Howell became argumentative and waved a pistol at him. Allegedly Raulerson shot Howell in self defense. Three days later, on January 6, 1976, a warrant based on an affidavit by Raulerson was issued for the arrest of Howell and his daughter on the charge of aggravated assault against Raulerson. The criminal proceeding on this charge was terminated a month later, however, when the county grand jury returned a "no bill".[2]

Eventually Howell also prevailed on the charges against him for criminal trespass and unlawful possession of a firearm. These counts came on for trial on February 5, 1976. The jury found Howell not guilty of trespass but guilty of a firearm offense. On appeal of the firearm conviction to the Supreme Court of Georgia, Howell's conviction was reversed on grounds that the Georgia statute permitting prosecution was unconstitutional.[3]

Howell filed this civil suit in the Northern District of Georgia on January 2, 1978. The district court judge dismissed DNR as a party defendant, but denied the motion to dismiss filed by the other defendants. Thereafter a motion for change of venue filed by the defendants was granted and the cause was transferred to the Middle District of Georgia, Valdosta Division.

Additional motions were filed by the defendants in the Middle District of Georgia. The district judge granted motions for summary judgment as to all the defendants except Louis Raulerson "for the reasons asserted by counsel" in their briefs. He dismissed the claim against Louis Raulerson because he found it to be "too nebulous to

---

*Toastmasters International, Inc.*, 467 F.2d 1389 (5th Cir. 1972); *Jacobson v. Industrial Foundation of Permian Basin*, 456 F.2d 258 (5th Cir. 1972).

**2.** The Echols County Grand Jury also returned a "no bill" with respect to Howell's aggravated assault charge against Raulerson arising from the same January 3, 1976 incident.

**3.** *Howell v. State*, 238 Ga. 95, 230 S.E.2d 853 (1976). Ga.Code Ann. § 45–116 provides that anyone who violates regulations promulgated by a commission is guilty of a misdemeanor and can be punished accordingly. In the opinion of the Georgia Supreme Court, the statute unconstitutionally delegated legislative authority to the commission by permitting it to make regulations the violations of which constituted a misdemeanor. No consideration was given to the evidentiary merits of the case.

rise to the constitutional proportions". The final judgment from which this appeal is taken was rendered on August 30, 1979.

Howell assigns as error (1) the award of summary judgment to all defendants except Louis Raulerson and the granting of Louis Raulerson's motion to dismiss; (2) the change of venue from the Northern District of Georgia to the Middle District of Georgia; (3) the refusal to remand the case to the Northern District of Georgia; (4) the entry of final judgment by the clerk; (5) the denial of his motion to amend his complaint; (6) the refusal to reinstate the DNR as a party defendant; and (7) the dismissal of the "summary of events" filed by Howell.

■ The appellant attacks the summary judgment ruling on procedural as well as substantive grounds. He first focuses on the fact that he received no notice of the date of the hearing on the motion. He purportedly had affidavits he would have filed had he known that a decision on the motion would be forthcoming so quickly. At oral argument, Howell's counsel identified this lack of notice as the principal error in the case and the main reason for reversal of the summary judgment.

Howell's counsel reads the Fed.R.Civ.P. 56(c) requirement for notice of the hearing date to mean that he will know the outside time in which opposing affidavits must be served.[4] The appellant cannot dispute the fact that he had notice of the pendency of the motion, though, because he filed a response. The appellees answer that the litigants' rights are preserved by a local rule for the Middle District of Georgia which provides that (1) a respondent to a motion for summary judgment must submit all responses, briefs or affidavits within ten days of service of the motion; and (2) all motions are decided without hearing unless otherwise ordered by the court on its own motion

or at the request of counsel.[5]  M.D.Ga.R. (b), (e) (1960). Fed.R.Civ.P. 56(c) contemplates that the ten-day advance notice of the earliest possible hearing date must be given so that the adverse party will have an opportunity to fully prepare his case. The respondent's Rule 56 interests were fully protected by the local rule which defined a ten-day period within which all materials must be filed in order to receive consideration from the court. *Kibort v. Hampton*, 538 F.2d 90, 91 n. 1 (5th Cir. 1976).

Howell also maintains that the adverse summary judgment was erroneously rendered as a matter of law. We do not agree with the appellant. We find, as did the district judge, that the facts and law were adequately and accurately presented by the parties in their briefs on motion in the trial court. For the following reasons, the district judge was correct in entering summary judgment favorable to the appellees.

■ Game and Fish rangers Knowlton, King and Raulerson are charged with deprivation of Howell's constitutionally-protected interests in arrest and prosecution accomplished with due process of law. *See Cook v. Houston Post*, 616 F.2d 791 (5th Cir. 1980); *Reeves v. City of Jackson, Mississippi*, 608 F.2d 644 (5th Cir. 1979). The appellees had probable cause to believe in good faith that Howell broke the law on June 21, 1975. Howell admitted that the area in which he was approached was a game management area. (Appellant's Reply Brief at 24). He further concedes that he was carrying a firearm, but he says the possession was lawful because the gun was broken. (Transcript at 173). The defense of probable cause negates a § 1983 claim based on an alleged false arrest. *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 228 (1967); *Hunter v. Clardy*, 558 F.2d 290, 291 (5th Cir. 1977); *Rodriguez v. Jones*, 473 F.2d 599, 604–05 (5th Cir.), *cert.*

---

4. Fed.R.Civ.P. 56(c) (1971) states in pertinent part:

"The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits."

5. An oral hearing is not required by Fed.R. Civ.P. 56(c). *Davis v. Howard*, 561 F.2d 565, 570–71 (5th Cir. 1977); *Benson v. Matthews*, 554 F.2d 860, 862 (8th Cir. 1977); *Kibort v. Hampton*, 538 F.2d 90, 91 (5th Cir. 1976).

*denied* 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973). Once probable cause has been established, the legality of the arrest is not affected by collateral bad faith of the arresting officer or a subsequent dismissal or acquittal of the charges.[6] *Hunter v. Clardy*, 558 F.2d at 292; *Perry v. Jones*, 506 F.2d 778, 780 (5th Cir. 1975). Knowlton, King and Louis T. Raulerson were entitled to summary judgment as a matter of law.

■ Joe D. Tanner's lack of personal participation in Howell's arrest dictates the summary judgment in his favor. The arrest was not effected pursuant to either a direct order from Tanner or a custom or policy instituted by Tanner. Since there is no showing of direct involvement by Tanner in the arrest, he cannot be liable under § 1983. *See Reimer v. Short*, 578 F.2d 621, 625 (5th Cir. 1978) *cert. denied* 440 U.S. 947, 99 S.Ct. 1425, 59 L.Ed.2d 635 (1979); *Locust v. DeGiovanni*, 485 F.Supp. 551, 552 (E.D. Pa.1980).[7]

■ Summary judgment was also authorized for Sheriff Leon Raulerson. In his deposition, Howell stated that he included Raulerson as a party only because his action in swearing out the accusations for the trespass and firearms offenses made him a "prosecutor". Raulerson is required by state law to issue accusations upon receipt of instructions from the district attorney as was the case here. Ga.Code Ann. § 27–704 (1972) (current version at Ga.Code Ann. § 27–704 (Supp.1980)). Where state law obligates an official to perform a ministerial duty, good faith is presumed absent express evidence on the record of bad motive. *Tucker v. Maher*, 497 F.2d 1309, 1313 (2d Cir.) *cert. denied* 419 U.S. 997, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974).[8]

■ With respect to the claim against Louis Raulerson arising from the January 3, 1976 shooting incident, however, we think the appellant alleged sufficient facts to withstand a motion to dismiss. A claimant must state facts showing that the state has deprived him of a liberty or property interest without due process of law. *Marrero v. City of Hialeah*, 625 F.2d 499, 519 (5th Cir. 1980) (U.S. app. pending). If these facts, when proven, would establish that the officer acted under color of state law and the conduct deprived the claimant of a constitutionally protected interest, then the plaintiff must have an opportunity to prove his case.

■ In the complaint, Howell asserted that Louis Raulerson, while dressed in

---

**6.** Howell's conviction for the firearm offense conclusively established that the arrest was made with probable cause, absent a showing of fraud, perjury or corrupt means. *Bergstralh v. Lowe*, 504 F.2d 1276, 1278 (9th Cir. 1974), *cert. denied* 420 U.S. 930, 95 S.Ct. 1131, 43 L.Ed.2d 402 (1975). Arguably this presumption survived intact after the Georgia Supreme Court's reversal on other than evidentiary grounds. Furthermore, the officers could not have known that the Georgia statute would be declared unconstitutional. The *Howell* decision was the opinion of a divided court and represented a shift in view which was foreshadowed by the most recent of precedent only. *See Sundberg v. State*, 234 Ga. 482, 216 S.E.2d 332 (1975).

**7.** It is clear that Tanner would not be responsible on a *respondeat superior* theory, even if the rangers' actions were unconstitutional. *Thompson v. Bass*, 616 F.2d 1259, 1268 (5th Cir. 1980), *cert. denied* —— U.S. ——, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980).

**8.** In his complaint Howell alleged that The Langdale Company entered a lease agreement with the State of Georgia so that certain lands in Echols County were established as a "game and fish management area". He further averred that Louis T. Raulerson and J. Leon Raulerson acted as agents of The Langdale Company in signing warrants and executing accusations respectively against him. The Langdale Company offered evidence proving that it did not employ any other of the named defendants, nor did it authorize any of the named defendants to perform any of the acts upon which Howell bases his claims. Furthermore, *respondeat superior* would provide no right of recovery against The Langdale Company pursuant to § 1983. *Thompson v. Bass*, 616 F.2d 1259, 1268 (5th Cir. 1980) *cert. denied* —— U.S. ——, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980). Finally, the contractual lease agreement does not constitute concerted action with the state such as is necessary to make out an independent cause of action against a private individual under § 1983. *See generally Vance v. Billingsly*, 487 F.Supp. 439, 442 (E.D.Tenn., N.D.1980).

his ranger uniform and standing beside a DNR vehicle, stopped him and threatened him with death if Howell were found to have placed "nails in the access road to the reserve". Given these references in the pleading to indicia of official state authority, coupled with the contention that the dispute centered on a DNR-related problem, we find that the appellant sufficiently pleaded state action. The magic words "under color of state law" are not absolutely necessary to state a § 1983 claim when factual allegations in the complaint clearly point in this direction. *Geach v. Moynahan*, 207 F.2d 714, 716–17 (7th Cir. 1953). Unquestionably, the malicious infliction of bodily injury as alleged by Howell constitutes deprivation of a property interest without due process of law. Hence, we are compelled to reverse the judgment of the district court granting Louis Raulerson's motion to dismiss for failure to state a cause of action and remand Howell's claim for a hearing on the merits.[9]

Assignments of error two and three are directed to the venue orders entered by the district judges in this case. The appellant argues that both judges abused their discretion in holding that the Middle District of Georgia was the appropriate venue because they did not consider the "interests of justice".

■ A district judge has the authority to transfer an action to any district in which it might have been brought for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404 (1976). The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations. *Simmons Ford, Inc. v. Consumers Union of United States, Inc.*, 490 F.Supp. 106, 107 (W.D.Mich., S.D.1980). Once a trial judge

decides that a transfer is justified, though, his ruling can only be overturned for a clear abuse of discretion. The presumption in favor of the district court judge is heavy. Appellate review is limited because it serves little purpose to reappraise such an inherently subjective decision. *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737 (1st Cir.) *cert. denied* 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977).

■ The appellant suggests that justice is not served by hearing his case in a district where he believes his likelihood of success on the merits would be prejudiced by extraneous factors. This argument manifests a misconception of the "interests of justice" standard. In applying § 1404, efforts to select one district to avoid or obtain particular rulings of another district is disfavored. *Cheeseman v. Carey*, 485 F.Supp. 203, 215 (S.D.N.Y.) *remanded for dismissal* 623 F.2d 1387 (2d Cir. 1980); *McCrystal v. Barnwell County*, 422 F.Supp. 219, 225 (S.D.N.Y.1976). The judges took proper account of the interests of justice when they considered the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be most "easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947); *ROC, Inc. v. Progress Drillers, Inc.*, 481 F.Supp. 147, 152 (W.D. Okl.1979); *Bartolacci v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 476 F.Supp. 381, 382–83 (E.D. Pa.1979); *Pope v. Missouri Pacific Railroad Co.*, 446 F.Supp. 447, 451 (W.D.Okl.1978). We affirm both venue determinations.

We have carefully reviewed the record and find no merit in assignments of error four through seven.[10]

---

9. The same set of facts may give rise to violations of both the federal statute and Georgia tort law. The rights protected by each are not necessarily identical, however, nor are the elements composing each cause of action. Accordingly, the existence of a state tort claim does not negate the entitlement of a litigant to a federal action as well. *Briley v. State of California*, 564 F.2d 849, 854 n. 4 (9th Cir. 1977).

10. We do think assignment of error six warrants some mention. At the time it issued the order dismissing the DNR, the district court did not have the benefit of *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) which overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the case relied upon by the trial court. *Monell* holds that a municipal governing body may be a "person" subject

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part.

to liability under 42 U.S.C. § 1983. However, *Monell* has no relevance to the dismissal of DNR, because the Supreme Court's decision is " 'limited to local government units which are not considered part of the State for Eleventh Amendment purposes'." *Bogard v. Cook*, 586 F.2d 399, 410 (5th Cir. 1978) *cert. denied* 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. at 690 n. 54, 98 S.Ct. at 2035–36 n. 54, 56 L.Ed.2d at 635 n. 54 (1978).